## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**BRIAN FISCHLER,**                          Case No.: 1:21-cv-00356 FB CLP

      Plaintiff,

v.

**FRESH CLEAN APPAREL INC.,**

      Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS AND
## INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant, Fresh Clean Apparel ("FCA"), by and through its undersigned counsel, hereby files its Motion to Dismiss the Complaint (the "Complaint") filed by Plaintiff, Brian Fischler ("Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff brings a claim for disability discrimination under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. ("Title III" or the "ADA") and alleges that he is unable to fully experience FCA's website. Plaintiff claims that this is a violation of the ADA, but he has failed to state a Title III claim against FCA as it is exempt from Title III requirements as an online-only retailer.  Additionally, any claim, even if well pled, is not justiciable as a matter of law because Plaintiff lacks standing to bring his claims. Furthermore, this Court lacks subject matter jurisdiction over Plaintiff's state and local claims. Finally, Plaintiffs claims are moot in light of alterations to FCA's website that occurred prior to service of process of this Complaint on Defendant. Thus, Plaintiff's Complaint should be dismissed in its entirety.

## FACTUAL BACKGROUND

FCA is an online retailer. It sells apparel on its website. It does not have physical stores or other locations accessible to the public, and operates entirely online though its website, www.freshcleantees.com (the "Website"). DE 1 at ¶ 18. Plaintiff is visually impaired and uses a screen reader to interact with the internet. DE 1 at ¶ 20. Plaintiff alleges that he visited the Website but states no reason why he did so. DE 1 at ¶ 21. Plaintiff further alleges that he was unable to effectively use the Website because it failed to comply with certain content accessibility guidelines. DE 1 at ¶¶ 21-22. Based on the alleged inability to access the Website, Plaintiff brought the instant action asserting that FCA discriminates against him in violation of Title III and equivalent New York state and local laws.

## INCORPORATED MEMORANDUM OF LAW

**I.    Plaintiff's Claims are not Justiciable Because Plaintiff Lacks Standing.**

Issues of justiciability and standing are properly brought before the court using Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction. *See, e.g.*, *Cortlandt St. Recovery Corp. v. Hellas Telecomms.,* 790 F.3d 411, 416-17 (2d Cir. 2015) ("A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the . . . plaintiff lacks constitutional standing to bring the action."). The Constitution limits the jurisdiction of Federal Courts to "cases" and "controversies." U.S. Const. art. III, § 2.

The "case or controversy" constraint imposes the doctrine of justiciability on federal courts. *Cortlandt St. Recovery Corp.*, 790 F.3d, at 416-17. "Standing is an aspect of justiciability" and therefore must be present for a matter to be properly before this Court. *Flast v. Cohen*, 392 U.S. 83, 98 (1968). "[T]he elements of Article III standing 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same

way as any other matter on which the plaintiff bears the burden of proof . . .'" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

To establish standing to bring a claim for injunctive relief under the ADA, (1) the plaintiff must allege past injury under the ADA, (2) it must be reasonable to infer that the discriminatory treatment would continue, and (3) it must be reasonable to infer that plaintiff intended to return to patronize the allegedly discriminatory service. *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013).

With respect to the reasonableness of inferring intent to return, courts consider four factors: (1) The proximity of the defendant's business to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definiteness of the plaintiff's plan to return; and (4) the frequency of plaintiff's travel near the defendant's business. *Castillo v. John Gore Org., Inc.*, No. 19-cv-388 (ARR) (PK), 2019 U.S. Dist. LEXIS 197706, at *8-9, 2019 WL 6033088 (E.D.N.Y. Nov. 14, 2019) (quoting *Feltzin v. Stone Equities, LLC*, No. CV 16-6457 (SJF) (AKT), 2018 U.S. Dist. LEXIS 22870 at *11 (E.D.N.Y. Feb. 8, 2018)).

"Courts considering ADA claims have found that disabled plaintiffs who had encountered barriers [to access] prior to filing their complaints have standing to bring claims for injunctive relief if they show a *plausible* intention or desire to return to the place but for the barriers to access." *Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, 2003 U.S. Dist. LEXIS 5145, at *21 (S.D.N.Y. Apr. 1, 2003) (emphasis added). "Intent to return to the place of injury 'some day' is insufficient." *Small v. Gen. Nutrition Cos.*, 388 F. Supp. 2d 83, 87 (E.D.N.Y. 2005) (citing *Lujan*, 504 U.S., at 564).

Conclusory allegations of intent to return have repeatedly been found not plausible enough to support standing. *See Castillo*, 2019 U.S. Dist. LEXIS 197706, at \*14 ("This broad allegation is not enough to raise a reasonable inference that [plaintiff] intended to visit the defendant's theater in the future."); *see also Stone Equities*, 2018 U.S. Dist. LEXIS 22870, at \*32 (finding no standing where "[t]he pleading states only that Plaintiff (1) 'plans to return to the [P]roperty once the barriers to access are corrected. . . and (2) 'desires to visit the [defendant's property] to assure himself that this [P]roperty is in compliance with the ADA.'"); *Chamaidan v. Tomy B. Haircare Inc.*, No. 17-CV-06948 (JMA) (ARL), 2019 U.S. Dist. LEXIS 173052, at \*11, 2019 WL 4917895 (E.D.N.Y. Sept. 30, 2019) ("Given the complete absence of any allegations that Plaintiff is interested in obtaining the services that Defendant provides, she has not plausibly alleged that she intends to return. . ."); *Matzura v. Red Lobster Hosp. LLC*, No. 19-cv-9929 (MKV), 2020 U.S. Dist. LEXIS 118485, at \*7, 2020 WL 3640075 (S.D.N.Y. July 6, 2020) ("[Plaintiff] has failed to establish standing under the ADA because he does not offer sufficient 'non-conclusory factual allegations' demonstrating a plausible intention to return to [defendant's premises]."); *Lopez v. Capital Grille Holdings, Inc.*, No. 1:19-cv-09891 (MKV), 2020 U.S. Dist. LEXIS 147478, at \*7 (S.D.N.Y. Aug. 14, 2020) ("Plaintiff has failed to establish standing under the ADA because he does not offer a single 'non-conclusory factual allegation' demonstrating a plausible intention to return to [defendant's premises]."); *Dominguez v. Grand Lux Cafe LLC*, 2020 U.S. Dist. LEXIS 109679, at \*7, 2020 WL 3440788 (S.D.N.Y. June 22, 2020) ("[Plaintiff] has failed to establish standing under the ADA because he does not offer any 'non-conclusory factual allegations' that demonstrate a plausible intention to return to a Grand Lux Café restaurant but for barriers to access."); *Dominguez v. Banana Republic, LLC*, No. 1:19-cv-10171-GHW, 2020 U.S. Dist. LEXIS

72193, at *9 (S.D.N.Y. Apr. 23, 2020) ("These generic, conclusory statements are plainly insufficient [to support standing].").

This Court "need not 'credit a complaint's conclusory statements without reference to its factual context.'" *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 686, 129 S. Ct. 1937, 1954 (2009)). When a plaintiff makes a conclusory claim that he or she might return to a website to utilize it for its commercial purpose but fails to allege facts to support that inference, the plaintiff lacks standing. *E.g.*, *Castillo*, 2019 U.S. Dist. LEXIS 197706, at *14; *Harty v. W. Point Realty, Inc.*, No. 19 CV 8800 (VB), 2020 U.S. Dist. LEXIS 141893, at *8-9 (S.D.N.Y. Aug. 7, 2020).

A plaintiff who merely visits websites to test for ADA compliance has not suffered an injury giving rise to standing. *W. Point Realty*, 2020 U.S. Dist. LEXIS 141893, at *13. A plaintiff who alleges only an intent to visit a website in the future to test for ADA compliance has not alleged the intent to return required to show standing. *Id.*

While there is no rule against filing duplicative lawsuits with similar factual allegations, "those who live by the photocopier shall die by the photocopier." *Mendez v. Apple Inc.*, 2019 U.S. Dist. LEXIS 110640, at *10, 2019 WL 2611168 (S.D.N.Y. Mar. 28, 2019) (finding no standing under the ADA when the complaint presented only generic recitations of Title III action elements without pleading specific injury to plaintiff).

Plaintiff must plead sufficient facts to permit a reasonable inference that he intends to return to the Website. Given the completely online nature of the Website, the proximity considerations in the first and fourth intent to return factors are rendered irrelevant. Thus, Plaintiff's intent must be determined by consideration of his past patronage and his definitive plans to return.

Plaintiff fails to assert that he ever intended to make a purchase from the Website. Plaintiff does not claim to have ever purchased anything from the Website, nor has Plaintiff stated more than a conclusory allegation that he might have, at one point, considered making a purchase from the Website. The mere mental conception that one might someday consider purchasing from a retailer does not result in an injury supporting standing, nor does it evidence that Plaintiff is a would-be patron. Thus, Plaintiff can hardly be said to have a history of patronage of FCA's business, and as such the history factor weighs against finding standing.

Plaintiff is a serial professional litigant, having filed more than 280 cases in New York federal courts since 2018, including at least 158 cases in the Eastern District alone. Plaintiff's complaints follow a predictable track: name a defendant with a retail website, identify a few problems on the website, and assert the same claims for relief found in this action. Many of these complaints contain boilerplate allegations, with only the names and website addresses of defendants changed between lawsuits. These nearly identical actions routinely fail to allege that Plaintiff ever had anything more than a conception to patronize the websites and retailers at issue.

This chronic litigiousness merits asking whether Plaintiff is visiting websites to shop for products or lawsuits. Given Plaintiff's non-existent history with FCA juxtaposed with his history of filing lawsuits, it is not reasonable to infer that Plaintiff ever intended to purchase from FCA. Therefore, Plaintiff lacks standing to support his suit against FCA.

Plaintiff never states that he intends to return to the Website or patronize FCA. The complaint merely states that, if certain changes were made, Plaintiff "*could* independently navigate [the Website], learn about Defendant's products, including sizing and color options, and complete a one-time or subscription purchase[.]" DE 1 at ¶ 24 (emphasis added). Plaintiff fails to allege even a suggestion that he would someday visit the Website to browse or purchase the products offered

6

there. Plaintiff merely alleges that he *could* return someday if the relief sought in the Complaint is granted. Therefore, Plaintiff has failed to allege, let alone establish, a definitive intent to return.

The complaint offers no facts from which to infer that Plaintiff is or has ever been interested in FCA's products or would ever return to purchase from the Website. This Court cannot reasonably infer Plaintiff intends to return to the Website when he himself does not even claim that he would do so. The allegations in the complaint fall below the basic elements of standing for an ADA claim by failing to allege Plaintiff intends to return to the Website at all, regardless of whether such intent is found plausible. Therefore, Plaintiff has failed to carry his burden of establishing standing and the Complaint must be dismissed.

Even if Plaintiff had included a basic statement that he would return to the Website if it were changed, this conclusory allegation is identical to those found wanting for standing in this district and other districts within the Second Circuit. Therefore, even if this Court assumes that the conclusion Plaintiff will return to the Website is inherent in the Complaint, the Complaint must still be dismissed for lack of standing.

Given Plaintiff's status as a professional litigant as noted above, the most reasonable inference that this Court can draw based on factual context is that Plaintiff is visiting commercial websites merely to test for compliance with the ADA, with the hopes of filing a lawsuit based on his findings. Merely testing a website for ADA compliance is not recognized as an injury supporting standing. Intent to return to a website merely to test for ADA compliance is not sufficient intent to return to support standing for a Title III claim. Therefore, under the most reasonable interpretation of the Complaint in light of Plaintiff's behavior, Plaintiff lacks standing and this Court must dismiss Plaintiff's Title III counts.

Plaintiff's failure to allege, let alone provide any factual support, that he ever intended to patronize the Website and that he ever intends to return makes the harm Plaintiff claims far from real and immediate. The harm Plaintiff claims he will suffer is highly speculative and insufficient to support his claim. Plaintiff has filed hundreds of actions against multiple defendants using near-identical complaints devoid of the distinct, particularized facts required to carry his burden to establish standing. Even ignoring the failure to expressly allege threshold elements of Title III standing, Plaintiff's instant complaint offers no concrete injury beyond a formulaic set of allegations that could be leveled at any commercial website. Thus, Plaintiff's Complaint must be dismissed for lack of standing. *See Mendez*, 2019 U.S. Dist. LEXIS 110640, at *10.

## II. Plaintiff Fails to State a Claim Upon Which Relief can be Granted Under Title III of the ADA.

Complaints "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] formulaic recitation of the elements of a cause of action will not do," and a plaintiff must plead more than "labels and conclusions." *Twombly*, 550 U.S., at 555.  Furthermore, courts are not bound to accept a plaintiff's legal conclusions when conducting this inquiry. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S., at 555.

Title III claims require a plaintiff to allege: (1) that [he] is disabled within the meaning of the ADA; (2) that the defendant owns, leases, or operates a place of public accommodation; and (3) that the defendant has failed to provide the plaintiff equal access to the goods or services provided at such place of public accommodation as a result of plaintiff's disability. *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008).

The weight of national authority holds that places of public accommodation must be physical spaces, or at least have a nexus to a physical space. *Magee v. Coca-Cola Refreshments*

*USA, Inc.*, 833 F.3d 530, 533-36 (5th Cir. 2016) (holding application of *noscitur a sociis*, a principle of statutory interpretation providing that words in a statute should be construed with reference to the words around them, as well as analysis of DOJ regulations supported limiting Title III to physical places); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) ("The clear connotation of the words in [Title III] is that a public accommodation is a physical place."); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613-14 (3d Cir. 1998) ("The plain meaning of Title III is that a public accommodation is a place. . ."); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114-15 (9th Cir. 2000) (adopting view of Third and Sixth Circuits that a public accommodation under Title III is a physical place); *Rendon v. Valleycrest Prods.*, 294 F.3d 1279, 1282 (11th Cir. 2002) (requiring nexus between physical place and discriminatory restrictions on access of the physical space by disabled individuals).

The ADA was plainly not intended to cover every business in the United States, but rather applies to a limited set of activities affecting commerce. *Magee*, 833 F.3d, at 532-33; 42 U.S.C. § 12181(7) (Lexis 2020). The list of public accommodations in Title III is exhaustive. *See Magee*, 833 F.3d, at 535 (examining legislative history to determine the exhaustive nature of Title III list).

Congress provided that the ADA should be construed liberally. *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012). But liberal construction neither requires nor allows a court to broaden the scope of a statute far beyond its text. *Yates v. United States*, 574 U.S. 528, 543 (2015) ("we rely on the principle of noscitur a sociis—a word is known by the company it keeps—to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.") (internal quotations removed).

As many circuits have noted, the language of Title III cabins "public accommodation" to physical places. *See, e.g.*, *McGee*, 833 F.3d, at 534. It is not the place for the judiciary to rewrite acts of Congress to reach places the legislature did not intend. *See Yates*, 574 U.S., at 543; *see also McGee*, 833 F.3d, at 535-36 (noting the exhaustive nature of the list of public accommodations in Title III means courts should refrain from expanding the definitions given by Congress).

The Second Circuit has not ruled on whether a business with a purely online presence is a "place of public accommodation" within the scope of Title III of the ADA. *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 392-93 (E.D.N.Y. 2017). The Second Circuit has held that "*an entity covered by Title III* is not only obligated by the statute to provide disabled persons with physical access, but is also prohibited from refusing to sell them its merchandise by reason of discrimination against their disability." *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 33, (2d Cir. 1999), *opinion amended on denial of reh'g*, 204 F.3d 392 (2d Cir. 2000) (emphasis added). *Pallozzi* concerned the underwriting practices of an insurance provider with physical offices, which are undisputedly within the scope of Title III. *Id.* at 33 n. 3 ("There is no dispute that Plaintiffs in this case have such a nexus [to a place of public accommodation under Title III].").

One case in the Eastern District of New York has held that a physical retailer's website was a place of public accommodation subject to Title III. *Blick Art Materials*, 268 F. Supp. 3d, at 393. Blick operated seven physical stores in New York. *Id.* at 386. The district court had to determine whether Blick's website was also subject to Title III, noting that the issue had not been resolved in *Pallozzi*. *Id.* at 393 ("The issue being contested now—the importance of a link between a 'place' and the goods and services being offered by the company—was given virtually no import by the [*Pallozzi*] court.").

10

The court in *Blick* ultimately decided that a website—in that case having a nexus to a physical space—can be a place of public accommodation. *Id.* at 393 (relying heavily on *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015), which itself relies on the minority view espoused by the First Circuit in *Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England*, 37 F.3d 12 (1st Cir. 1994)).

Even after the *Blick* decision, courts in this district and throughout the Second Circuit continue express doubt about the Title III status of websites. *See Crosson v. Popsockets LLC*, No. 19 CV 200 (CBA)(LB), 2019 U.S. Dist. LEXIS 175824, at *4 n.3, 2019 WL 6134416 (E.D.N.Y. Oct. 8, 2019) (approving consent decree while noting the website issue is not a resolved question in the Second Circuit); *see also Delacruz v. Naturopathica Holistic Health Inc.*, No. 18 Civ. 7548 (KHP), ECF No. 23 (S.D.N.Y. Mar. 19, 2019) (same); *Markett v. Five Guys Enters. LLC*, No. 17-cv-788 (KBF), 2017 U.S. Dist. LEXIS 115212, at *5 (S.D.N.Y. July 21, 2017) (leaving open question whether website was a place of public accommodation on its own or merely in conjunction with physical restaurants).

Plaintiff has failed to plead facts sufficient to show the necessary elements of his Title III claim. For purposes of this motion, FCA does not dispute that Plaintiff is disabled and satisfies the first element of a Title III claim, but Plaintiff has failed to establish the second element. FCA is not a place of public accommodation because it has no nexus to a physical place of business and is therefore not subject to Title III. This alone requires that the Complaint be dismissed for failure to state a claim upon which relief can be granted.

In order to be subject to Title III, a website must have a nexus with a physical location. The requirement of a physical nexus is directly in line with the language of Title III, as recognized by the majority of circuit courts. The Second Circuit in *Pallozzi* expanded the duties of an entity

covered under Title III, but it did not expand the scope of "public accommodation" under Title III. The controversy in that case was not whether the insurance provider was a place of public accommodation subject to Title III, but rather whether the insurer's underwriting conduct violated Title III.

Thus, whether a business is covered by Title III is a threshold trigger for the duties imposed by *Pallozzi*. It does not follow that the duties imposed should be somehow reversed and used to establish the standard for whether an entity is covered by Title III. Ultimately, *Pallozzi* is easily harmonized with the physical nexus requirement because the court found the nexus to an insurance office, a physical place, was so evident the connection was disposed of in a footnote. *See Pallozzi*, 198 F.3d, at 33 n. 3.

Thus, under Second Circuit precedent, the Website is not a place of public accommodation absent a nexus with a physical store or location open to the public. Plaintiff admits that FCA has no physical retail outlets and operates solely through the Website. DE 1 at ¶ 18. Because FCA does not operate physical stores, there is no nexus to a place of public accommodation, and this Court should find that neither FCA nor the Website is subject to Title III. Accordingly, this Court should dismiss the Complaint for failure to state a claim upon which relief may be granted.

*Blick* is readily distinguishable from the present case because FCA operates no physical stores, in New York or otherwise. By operating physical stores, Blick was clearly subject to Title III and therefore it was bound to provide more than just physical access to its goods and services under *Pallozzi*. Just as in *Pallozzi*, there was no doubt that the website had a sufficient nexus to an established place of public accommodation, i.e., the physical retail stores. Because the issue in *Blick* could be resolved directly under *Pallozzi*, *Blick's* extraneous examination of the scope of Title III should be disregarded as dicta. To the extent that *Blick* is persuasive, other courts in this

district and throughout the Second Circuit have not accepted its resolution of the website issue. This Court should reject *Blick* and find that neither FCA nor the Website is subject to Title III, and therefore dismiss the Complaint for failure to state a claim upon which relief may be granted.

Even assuming, *arguendo*, that *Pallozzi* supports finding that a website alone is a place of public accommodation, which it does not, the decision's meaning deserves reconsideration after more than two intervening decades of digital evolution. When it was decided, most retail websites were associated with brick-and-mortar stores, and the extension of Title III to their websites was logically tied to the store's recognized Title III obligations. Today, a plethora of businesses operate in an entirely digital capacity, without permanent physical spaces. To expand Title III to cover these businesses would be out of line with the ADA and would be an improper exercise of judicial power.

The ADA was not meant to reach each and every business in the country. Rather, Congress enumerated a list of covered entities which it recognized as exhaustive. A website standing alone does not appear on that list. Finding that a website without a nexus to a physical place of accommodation is subject to Title III reads into the statute an entirely new category of covered entity. Doing so would impose massive new regulatory burdens on actors Congress clearly did not intend the ADA to reach. It is the duty of Congress, not the courts, to extend the scope of the ADA in this manner if there is a desire to do so.

For the reasons set forth above, this Court should find that a website standing apart from any physical retail space is not a public accommodation. Because the Website is not a place of public accommodation within the scope of Title III, Plaintiff has failed to demonstrate a required element of his claim and this Court must dismiss the Complaint for failure to state a claim upon which relief may be granted.

**III.    This Court Lacks Subject Matter Jurisdiction over Plaintiff's State Law Claims.**

A federal court must dismiss claims if at any time the court determines it lacks subject matter jurisdiction over them. Fed. R. Civ. P. 12(h)(3), *see also Castillo*, 2019 U.S. Dist. LEXIS 197706, at *17. Exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1367 requires a federal claim as the anchor. *Eisner v. Cardozo*, 684 F. App'x 29, 32 (2d Cir. 2017) (quoting *Oneida Indian Nation of N.Y. v. Madison Cty.*, 665 F.3d 408, 437, 439-40 (2d Cir. 2011)) (ordering state law claims dismissed when anchor ADA claims were properly dismissed before trial). "A claim of disability discrimination under the New York State Human Rights Law . . . is governed by the same legal standards as govern federal ADA claims." *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) (citation omitted). A plaintiff who lacks standing to bring an ADA suit also lacks standing to bring the equivalent claims under state and city law. *Castillo*, 2019 U.S. Dist. LEXIS 197706, at *17.

Plaintiff's Complaint seeks identical relief under the New York State Human Rights Law and the New York City Human Rights Law arising out of the same facts and circumstances as his claims under the ADA. Plaintiff asserts that this Court has supplemental jurisdiction over the state and local claims. As set forth above, Plaintiff's federal ADA claim must be dismissed for lack of standing and failure to state a claim. Because this dismissal will result in no remaining federal claim, continued exercise of supplemental jurisdiction would be improper. Therefore, Plaintiff's state and local claims must be dismissed.

Plaintiff's state and local claims are not justiciable because Plaintiff lacks standing to bring them. The standing requirements are identical for the ADA claims and the state and local claims. As set forth above, Plaintiff lacks standing to bring the instant suit under the ADA. Accordingly,

he lacks standing to bring the state and local claims. *See Castillo*, 2019 U.S. Dist. LEXIS 197706, at \*17. Therefore, Plaintiff's state and local claims must be dismissed.

## IV.    Plaintiff's Claims Should be Dismissed as Moot Based on Already Implemented Changes to the Website.

As Title III of the ADA only permits injunctive relief, an ADA claim "can become moot if a defendant remedies the access barrier during the pendency of the litigation." *Rizzi v. Domestic Operating Co., Inc.*, No. CV 18-1127 (SJF)(ARL), 2020 WL 7000356, at \*5 (E.D.N.Y. Aug. 11, 2020) (citing *Bacon v. Walgreen Co.*, 91 F. Supp. 3d 446, 451 (E.D.N.Y. 2015)).

Similar state claims may also become moot under this standard. *See Diaz v. Kroger Co.*, No. 18 Civ. 7953 (KPF), 2019 WL 2357531, at \*1 (S.D.N.Y. June 4, 2019) (granting defendant's motion to dismiss plaintiff's federal and state law claims); *Sullivan v. Study.com LLC*, No. 18-CV-1939 (JPO), 2019 WL 1299966, at \*6 (S.D.N.Y. Mar. 21, 2019) (quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006)) ("A claim of disability discrimination under the New York State Human Rights Law is governed by the same legal standards as govern federal ADA claims.").

However, "factual changes made by a defendant after litigation has commenced cannot render a case moot unless it is absolutely clear the defendant cannot resume the allegedly offending conduct." *Diaz v. Lobel's of N.Y., LLC*, No. 16-CV-6349 (NGG) (SMG), 2019 WL 3429774, at \*5 (E.D.N.Y. July 30, 2019) (citing *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010)).

Thus, asserting mootness is a "heavy burden," and the Second Circuit applies a two-part test to determine whether this burden has been met. *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)). Under this test, "a defendant must demonstrate that '(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or

events have completely and irrevocably eradicated the effects of the alleged violation.'" *Rizzi*, 2020 WL 7000356, at \*5 (citing *Clear Channel Outdoor, Inc.*, 594 F.3d at 110).

In analyzing mootness challenges, courts in the Second Circuit have found that website alterations may effectively render accessibility-related claims moot so long as those alterations resolve the alleged violation and that recurrence of the violation is not reasonably expected to occur. *See, e.g.*, *Rizzi v. Domestic Operating Co., Inc.*, No. CV 18-1127 (SJF)(ARL), 2020 WL 6253713, at \*4 (E.D.N.Y. Oct. 23, 2020) (adopting the magistrate judge's recommendation to find plaintiff's claims moot after defendant altered its website); *Diaz*, 2019 WL 2357531, at \*3-5 (finding that defendant's removal of accessibility barriers, compliance with Website Content Accessibility Guidelines, and commitment to monitoring future technological developments rendered plaintiff's claims moot).

In *Rizzi v. Domestic Operating Company, Inc.*, the court dismissed a blind plaintiff's complaint based, in part, on evidence from an accessibility expert and the fact that the defendant had expended resources to ensure continued compliance with the ADA. *Rizzi*, 2020 WL 6253713, at \*4; *Rizzi*, 2020 WL 7000356, at \*6. Per the expert, who tested the defendant's altered websites for ADA compliance after the lawsuit began, the defendant removed the accessibility barriers encountered by the plaintiff, as blind users could "search for, find, and complete hotel room reservations on the Websites." *Rizzi*, 2020 WL 7000356, at \*6. Moreover, the defendant retained "a team of nine accessibility specialists (including one person who [was] blind) to carry out a robust and multi-faceted strategy to ensuring the accessibility of the Websites." *Id.* Accordingly, the court was satisfied that the defendant had met the Second Circuit's two-part test. *Id.* As the plaintiff could not demonstrate why the defendant's website changes might be insufficient, the court found that the plaintiff's claims were moot. *Id.*

16

Similarly, in *Diaz v. Kroger Co.*, the District Court for the Southern District of New York dismissed another blind plaintiff's ADA and state claims due to modifications that the defendant made to its website prior to the inception of the lawsuit. *Diaz*, 2019 WL 2357531, at *5, 8.

According to the defendant's group product design manager, the defendant conformed its website to the Website Content Accessibility Guidelines ("WCAG") and complied with WCAG 2.0 standards. *Id.* at *3. Additionally, after the defendant was served with the plaintiff's complaint, the manager confirmed the issues alleged in the complaint had already been remedied and that the defendant was "committed to continuing to keep its website up to date and compliant with all applicable standards to make the website as accessible to all as possible." *Id.*

In short, the defendant did not simply rely on some future remediation plan or make a "conclusory assertion" that its website was ADA compliant; rather, affirmative action was taken to address accessibility concerns even before the lawsuit began. *Id.* Therefore, "there [was] no reason for [the defendant] to undo the changes that [had] been made," and the plaintiff's claims were moot. *Id.*

Second Circuit courts have also examined cases where modifications to a website were not enough to render a plaintiff's claims moot. *See, e.g.*, *Diaz*, 2019 WL 3429774, at *6. For instance, in *Diaz v. Lobel's of New York, Inc.*, the plaintiff's inability "to access certain features of the [defendant's] Website or complete a purchase on the Website" continued even after the defendant made changes. *Id.* As such, this court could not conclude, based on the evidence before it, that the defendant "fully rectified all access barriers" to the satisfaction of the Second Circuit's two-part test for mootness. *Id.* Thus, the plaintiff's claims were not moot, and the defendant's motion to dismiss was denied. *Id.*

17

Ultimately, Plaintiff's claims are moot in the present case because FCA has made alterations to its Website since Plaintiff's purported visits to the Website. Despite not being a place of public accommodation due to its online-only operations, FCA voluntarily took steps prior to service of the Complaint to ensure ADA compliance and subsequently remedy Plaintiff's alleged violations. DE 1 at ¶¶ 21-22. Notably, FCA continues to adopt and has since improved a number of accessibility technologies on the Website, including the Accessible Rich Internet Applications ("ARIA") technique, which helps blind users read, comprehend, and enjoy the Website.

In conjunction with ADA compliance company accessiBe, which was retained prior to this litigation being filed to assist FCA in improving Website accessibility, FCA offers Website users a variety of options to design the Website to their personal needs. These options include settings for the visually impaired, blind individuals, individuals with flash and color sensitivities, and individuals with cognitive disabilities and ADHD.

 FCA adopted changes to the Website to render it compatible with screen reader software, including JAWS, NVDA, VoiceOver, and TalkBack. These steps have brought the Website into compliance with WCAG 2.1 standards. Prior to service of this lawsuit, FCA's changes remedied the barriers to access claimed by Plaintiff, and therefore Plaintiff's claims are moot.

Like the defendant in *Diaz*, FCA proactively enhanced its Website accessibility prior to even being served with the Complaint. FCA meets WCAG 2.1, even though it is not required to do so. Furthermore, Plaintiff has not alleged any new access barriers since FCA's changes were made. For these reasons, Plaintiff's claims are now moot and must be dismissed.

## **CONCLUSION**

Plaintiff does not allege anything more than conclusory statements that he once visited the Website and has therefore suffered no injury. Further, Plaintiff has failed to allege any non-

conclusory, fact-based intentions to return to patronize the Website, rendering him without standing to bring his claims.

Moreover, FCA's Website is not a place of public accommodation and therefore Plaintiff fails to meet a threshold requirement in alleging a Title III ADA claim. Plaintiff's state and local law claims must fall with the federal ADA claim.

Finally, Plaintiff's claims are moot in light of changes already made to the Website prior to service of process in this action. For this and the foregoing reasons, FCA respectfully requests that this Court dismiss the Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

Respectfully submitted,

Adam C. Losey, Esq.
N.Y. Bar No. 4848867
LOSEY PLLC
44 Court Street, Suite 1217,
Brooklyn, NY 11201
(407) 906-1605
alosey@losey.law
docketing@losey.law
*Attorneys for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the

Court's CM/ECF system this 23 day of February 2021, which will provide notice and copy

hereof to all counsel of record.

_____
Adam C. Losey, Esq.
N.Y. Bar No. 4848867
LOSEY PLLC
44 Court Street, Suite 1217,
Brooklyn, NY 11201
(407) 906-1605
alosey@losey.law
docketing@losey.law
*Attorneys for Defendant*